Matter of Kennedy v 3rd Track Constructors (2023 NY Slip Op 00466)

Matter of Kennedy v 3rd Track Constructors

2023 NY Slip Op 00466

Decided on February 2, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 2, 2023

533556
[*1]In the Matter of the Claim of Alastair Kennedy, Appellant,
v
3rd Track Constructors et al., Respondents. Workers' Compensation Board, Respondent.

Calendar Date:December 14, 2022

Before:Egan Jr., J.P., Clark, Pritzker, Fisher and McShan, JJ. 

Goldberg & Allen, LLC, Mineola (Andrew P. Goldberg of counsel), for appellant.
Chartwell Law, New York City (Misha Iokheles of counsel), for 3rd Track Constructors and another, respondents.

Clark, J.
Appeal from a decision of the Workers' Compensation Board, filed May 11, 2021, which ruled, among other things, that claimant did not sustain causally-related injuries to his neck and left shoulder and denied his claim for workers' compensation benefits.
Claimant, an operating engineer, sustained work-related injuries in October 2019 when he slipped and fell into a hole at a job site. The hole, alleged by claimant as being between five and eight feet deep, contained a directional drilling tool known as a Pow-R Mole, and claimant purportedly fell — up to his armpits — a two-foot gap between the Pow-R Mole and the side of the excavated hole, which had not yet been backfilled. Claimant subsequently filed a claim for workers' compensation benefits alleging injuries to his left shoulder, foot and ankle. The employer's workers' compensation carrier initially accepted the claim for injuries to claimant's left foot and ankle, and claimant underwent surgery on his left shoulder in March 2020 and on his neck in May 2020. In the interim, claimant alleged that he injured his neck during the incident; the carrier contested the neck and left shoulder injuries and raised the possibility that claimant violated Workers' Compensation Law § 114-a.
Following various hearings, independent medical examinations and depositions of evaluating physicians, a Workers' Compensation Law Judge (hereinafter WCLJ) found, among other things, that claimant's testimony regarding the manner in which the accident occurred, as well as any prior injuries he had sustained, was not credible. As a result, the WCLJ, among other things, declined to establish claimant's neck as an additional injury site [FN1] and, further, found claimant's misrepresentations to be sufficiently egregious as to sustain a violation of Workers' Compensation Law § 114-a and warrant imposition of both a mandatory and a discretionary penalty. Upon administrative review, the Workers' Compensation Board — in a detailed decision — affirmed the WCLJ's decision and amended decision and, among other things, disallowed the claims for left shoulder and neck injuries and upheld the mandatory and discretionary penalties imposed. This appeal by claimant ensued.
With respect to the additional injury sites alleged, i.e., claimant's left shoulder and neck, "[t]he Board is empowered to determine the factual issue of whether a causal relationship exists based upon the record, and its determination will not be disturbed when supported by substantial evidence" (Matter of Blanch v Delta Air Lines, 204 AD3d 1203, 1204-1205 [3d Dept 2022] [internal quotation marks and citations omitted]; accord Matter of Sudnik v Pinnacle Envtl. Corp., 190 AD3d 1067, 1068 [3d Dept 2021]). To that end, claimant bore the burden of establishing, "by competent medical evidence, the existence of a causal connection between his . . . injury and his . . . employment" (Matter of Minichino v Amazon.com DEDC LLC, 204 AD3d 1289, 1291 [3d Dept 2022] [internal quotation [*2]marks and citation omitted]; see Matter of Guna v Delta Airlines, Inc., 202 AD3d 1190, 1191 [3d Dept 2022]). In assessing such proof, "the Board has broad authority to resolve factual issues based on credibility of witnesses and draw any reasonable inference from the evidence in the record" (Matter of Salas v Tom Cat Bakery, Inc., 193 AD3d 1225, 1227 [3d Dept 2021] [internal quotation marks and citations omitted]; accord Matter of Sausto v Wildlife Conservation Socy., 208 AD3d 1565, 1567 [3d Dept 2022]).
In disallowing the claim for the additional injury sites, the Board noted that "claimant's testimony regarding the mechanism of injury for the additional sites was not corroborated by the employer's witnesses" and that his corresponding "account of the accident and description of how the left shoulder and neck injuries occurred" was not credible. Upon reviewing the record as a whole, we find that the Board's conclusions in this regard are supported by substantial evidence and, as such, will not be disturbed.
As noted previously, claimant testified that he fell — "way down" and up to his armpits — into the gap between the Pow-R Mole and the side of the excavated hole. According to claimant, the gap in question was approximately two feet wide, and he fell roughly five to eight feet,[FN2] as a result of which he was "buried," had to be pulled out by his coworkers and had to lie on the ground for roughly 20 minutes after the accident. Although the accident was apparently unwitnessed, two of claimant's coworkers, who were placing boards around the excavated hole, contradicted claimant's description of the gap, as well as the degree to which claimant actually fell into it. According to the coworkers, the gap was 6 to 12 inches wide and, at best, one of claimant's legs fell into it.[FN3] Both of claimant's coworkers also testified that claimant got up from the ground on his own within a few minutes of falling. The Board, as "the sole arbiter of witness credibility" (Matter of Elias-Gomez v Balsam View Dairy Farm, 162 AD3d 1356, 1358 [3d Dept 2018] [internal quotation marks and citations omitted]), was well within its discretion to credit the coworkers' testimony — particularly given the photographs of the accident scene (and corresponding gap) contained in the record.
In addition to the foregoing, the Board found that claimant was also inconsistent in reporting any prior neck or left shoulder injuries to the various physicians who rendered opinions in this matter. For example, although claimant at times denied sustaining a prior injury to his left shoulder, the record reflects that, in August 2019, claimant complained of "severe left shoulder pain," which had persisted for nine months and for which he received a cortisone injection. Similarly, although claimant denied sustaining a prior neck injury, the record reveals that claimant was injured in a work-related motor vehicle accident in 1995 and that he thereafter complained of and sought treatment for neck [*3]pain. Additionally, claimant advised one of his treating physicians in January 2020 that he had "immediate neck pain" as a result of falling into the gap, but claimant did not list his neck as an injury site on the C-3 form filed in this matter, and the physician who evaluated claimant within two weeks of the accident noted that claimant had "full, pain free, stable range of motion of the cervical spine."
Numerous physicians reported that their opinions as to causal relationship were based, at least in part, upon claimant's description of the accident site and the injuries that he allegedly sustained at that time. Noting that claimant's testimony in this regard was not credible and citing claimant's failure to disclose his prior neck or shoulder injuries to certain providers, the Board reasonably concluded that, absent "a truthful medical history," the medical opinions rendered did not support the additional injury sites alleged (see Matter of Salas v Tom Cat Bakery, Inc., 193 AD3d at 1227; Matter of Elias-Gomez v Balsam View Dairy Farm, 162 AD3d at 1358; cf. Matter of Urdiales v Durite Concepts Inc/Durite USA, 199 AD3d 1214, 1215-1216 [3d Dept 2021], lv denied 38 NY3d 907 [2022]). Accordingly, we discern no basis upon which to disturb the Board's decision to disallow the claim with respect to claimant's asserted neck and shoulder injuries.
We reach a similar conclusion regarding the Board's finding of a violation of Workers' Compensation Law § 114-a and the corresponding imposition of the mandatory penalty. "A claimant who, for the purpose of obtaining workers' compensation benefits, knowingly makes a false statement or representation as to a material fact shall be disqualified from receiving any compensation directly attributable to such false statement or representation" (Matter of Arena v Upstate Niagara Coop. Inc., 208 AD3d 1400, 1401 [3d Dept 2022] [internal quotation marks and citations omitted]; see Matter of Kornreich v Elmont Glass Co., Inc., 194 AD3d 1322, 1322-1323 [3d Dept 2021]). "A fact will be deemed material so long as it is significant or essential to the issue or matter at hand, and an omission of material information may constitute a knowing false statement or misrepresentation" (Matter of Nappi v Verizon N.Y., 205 AD3d 1181, 1182 [3d Dept 2022] [internal quotation marks and citations omitted]; see Matter of Peck v Donaldson Org., 191 AD3d 1078, 1079 [3d Dept 2021]). Without belaboring the point, the Board did not credit claimant's account of the accident or the manner in which the left shoulder and neck injuries occurred. Indeed, the record supports the Board's finding that the gap that claimant fell into was not as large as he claimed, and it provides sufficient support for the Board's finding that he failed to properly disclose prior injuries to his left shoulder and neck. Such omissions and inconsistencies support the Board's imposition of a mandatory penalty under Workers' Compensation Law § 114-a (see Matter of Angora [*4]v Wegmans Food Mkts., Inc., 171 AD3d 1419, 1421 [3d Dept 2019]).
However, we agree with claimant's contention that the imposition of the penalty of total disqualification from future wage loss benefits is disproportionate to the offense. Such a penalty is appropriate where "the underlying deception has been deemed egregious or severe, or there was a lack of mitigating circumstances" (Matter of Conliffe v Darden Rest., 187 AD3d 1398, 1401 [3d Dept 2020] [internal quotation marks and citations omitted]). Here, although claimant made misstatements regarding prior injuries to his neck and left shoulder, our review of the record leads us to conclude that the penalty of total disqualification from future wage loss benefits "is so disproportionate to the offense as to be shocking to one's sense of fairness" (Matter of Young v Acranom Masonary Inc., 193 AD3d 1315, 1317 [3d Dept 2021] [internal quotation marks and citations omitted]; see Matter of Conliffe v Darden Rest., 187 AD3d at 1401; compare Matter of Restrepo v Plaza Motors of Brooklyn Inc., 181 AD3d 1108, 1111 [3d Dept 2020]). As such, we reverse the imposition of the discretionary penalty.
Egan Jr., J.P., Pritzker, Fisher and McShan, JJ., concur.
ORDERED that the decision is modified, without costs, by reversing so much thereof as disqualified claimant from receiving all future wage replacement benefits, and, as so modified, affirmed.

Footnotes

Footnote 1: The WCLJ's written decision lists claimant's neck as an additional injury site but also makes reference to "the additional sites alleged" by claimant, which presumably includes claimant's left shoulder.

Footnote 2: Claimant's representations as to the depth of the hole were repeated to various treating or evaluating physicians.
Footnote 3: By his own account, claimant was approximately six feet, two inches tall and weighed about 230 pounds.