Matter of Kallman v Sanitary Dist. No. 6 (2023 NY Slip Op 06569)

Matter of Kallman v Sanitary Dist. No. 6

2023 NY Slip Op 06569

Decided on December 21, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 21, 2023

534777
[*1]In the Matter of the Claim of Jason Kallman, Appellant,
v
Sanitary District No. 6 et al., Respondents. Workers' Compensation Board, Respondent.

Calendar Date:November 16, 2023

Before:Egan Jr., J.P., Clark, Aarons, Ceresia and Mackey, JJ.

Polsky, Shouldice & Rosen, PC, Rockville Centre (Patrick M. Conroy of counsel), for appellant.
Stewart, Greenblatt, Manning & Baez, Syosset (Thomas A. Lumpkin of counsel), for Sanitary District No. 6 and another, respondents.
Letitia James, Attorney General, New York City (Alison Kent-Friedman of counsel), for Workers' Compensation Board, respondent.

Ceresia, J.
Appeal from a decision of the Workers' Compensation Board, filed June 3, 2021, which ruled, among other things, that claimant violated Workers' Compensation Law § 114-a and disqualified him from receiving future indemnity benefits.
In June 2017, claimant, a sanitation worker, injured his right foot while stepping down from the back of a truck and landing on the ground incorrectly. His subsequent claim for workers' compensation benefits was established for a work-related injury to his right foot, and claimant's average weekly wage was set.[FN1] Examinations for permanency ensued in due course, and medical opinions relative thereto were produced for consideration by a Workers' Compensation Law Judge (hereinafter WCLJ). In a September 2019 amended reserved decision, the WCLJ awarded claimant an overall 25% schedule loss of use (hereinafter SLU) of the right foot, which the WCLJ reduced by 8.75% for the previous SLU of the right foot award that claimant received in 2012. That decision was subsequently upheld by the Workers' Compensation Board in December 2019.
In January 2020, the employer and its workers' compensation carrier (hereinafter collectively referred to as the carrier) requested a hearing to address its allegation that claimant violated Workers' Compensation Law § 114-a by concealing his prior compensable injuries, including his prior injury to his right foot. Following a hearing, the WCLJ found that claimant did not violate Workers' Compensation Law § 114-a. Upon administrative review, the Board reversed, finding that claimant violated Workers' Compensation Law § 114-a by failing to disclose his prior related compensable injuries on his application for benefits and by failing to inform his evaluating physicians of his prior injuries. The Board, in addition to a mandatory penalty of forfeiture of the SLU award, also found that claimant's misrepresentations were sufficiently egregious to warrant imposition of a discretionary penalty that permanently disqualified claimant from receiving any future indemnity benefits. Claimant appeals.
"Workers' Compensation Law § 114-a (1) provides, in relevant part, that a claimant who, for the purpose of obtaining workers' compensation benefits or influencing any determination relative thereto, knowingly makes a false statement or representation as to a material fact shall be disqualified from receiving any compensation directly attributable to such false statement or misrepresentation" (Matter of Koratzanis v U.S. Concrete, Inc., 209 AD3d 1075, 1076 [3d Dept 2022] [internal quotation marks and citations omitted]; see Matter of Losurdo v Asbestos Free, 1 NY3d 258, 265 [2003]; Matter of Belfiore v Penske Logistics LLC, 209 AD3d 1095, 1096 [3d Dept 2022]; Matter of Arena v Upstate Niagara Coop. Inc., 208 AD3d 1400, 1401 [3d Dept 2022]). "A fact will be deemed material so long as it is significant or essential to the issue or matter at hand, and an omission of material information may constitute a knowing false [*2]statement or misrepresentation" (Matter of Nappi v Verizon N.Y., 205 AD3d 1181, 1182-1183 [3d Dept 2022] [internal quotation marks and citations omitted]; see Matter of Peck v Donaldson Org., 191 AD3d 1078, 1079 [3d Dept 2021]). "Whether a claimant has violated the statute lies within the province of the Board, which is the sole arbiter of witness credibility, and its decision will not be disturbed if supported by substantial evidence" (Matter of Koratzanis v U.S. Concrete, Inc., 209 AD3d at 1076-1077 [internal quotation marks and citations omitted]; see Matter of Barros v John P. Picone, Inc., 188 AD3d 1397, 1399 [3d Dept 2020]).
Contrary to claimant's contention, there is substantial evidence in the record supporting the Board's determination that claimant violated Workers' Compensation Law § 114-a by making omissions and false statements of material fact for the purpose of obtaining wage replacement benefits. The record reflects that claimant, in his July 2017 application for workers' compensation benefits, failed to disclose the existence of his prior injuries and related SLU awards made for impairments to his left foot and, as particularly relevant here, his right foot (see Workers' Compensation Law § 15 [3] [d]). In his application, claimant responded "no" to the question asking him whether he had "another injury to the [injured] body part." Claimant also failed to mention his prior compensable injuries to either his left foot or right foot to Douglas Livingston, his treating physician, and to Jay Abeles, the physician who conducted two independent medical examinations of claimant on behalf of the carrier. When claimant first presented on June 20, 2017, following the work-related accident, a medical report from a treating physician with Livingston's practice group reflects that claimant reported no prior medical or surgical history to his feet. In that regard, Livingston testified during a deposition that he was not provided with any history of prior treatment of claimant's left or right foot. Abeles reported that, during an August 2018 independent medical examination of claimant, claimant stated that "he never had foot issues before." Following a January 2019 independent medical examination, Abeles reported that, "[a]gain, the claimant states he never had any foot problems before the accident." Abeles also confirmed in his deposition testimony that claimant denied having received "any treatment" to his left or right foot. To the extent that claimant offered exculpatory testimony, this presented "a credibility issue for the Board to resolve" and did not absolve claimant from providing truthful and accurate information throughout the underlying proceedings regarding his prior injuries (Matter of Poli v Taconic Correctional Facility, 83 AD3d 1339, 1340 [3d Dept 2011]).
Nevertheless, the mandatory penalty imposed by the Board was without record support. The statutory "language is carefully crafted in that . . . a strong link must be established [*3]between the false statement or representation and the forfeited compensation" (Matter of Losurdo v Asbestos Free, Inc., 1 NY3d at 265; see Martinez v Kingston City School Dist., 140 AD3d 1421, 1424 [3d Dept 2016]). The WCLJ reduced the overall 25% SLU award by subtracting the prior 8.75% SLU award. Thus, any compensation directly attributable to claimant's misrepresentation — namely, his failure to disclose the prior SLU award for the right foot — had already been forfeited, and there was an insufficient link between that misrepresentation and the net 16.25% SLU award.
As for the Board's imposition of the discretionary penalty of disqualification from future wage replacement benefits, the Board must provide a rationale as to why this onerous penalty is warranted (see Matter of Kodra v Mondelez Intl., Inc., 145 AD3d 1131, 1134 [3d Dept 2016]), and the rationale supplied in this case was, again, unsupported by the record. In imposing permanent disqualification, the Board stated that claimant's misrepresentation "allowed for greater [SLU] findings in the permanency report of Dr. Abeles, as he did not take into account the prior schedules awarded, which the WCLJ had to take into account by his reserved decision." However, Abeles found that claimant had a 0% right foot SLU, which the WCLJ ultimately disregarded. Therefore, it cannot be said that claimant's misrepresentation resulted in any "greater" SLU findings by Abeles. As no other explanation was provided, we are constrained to find that the imposition of the discretionary penalty should be reversed (see Matter of Young v Acranom Masonary Inc., 193 AD3d 1315, 1318 [3d Dept 2021]; Matter of Conliffe v Darden Rest., 187 AD3d 1398, 1401 [3d Dept 2020]).
Egan Jr., J.P., Clark, Aarons and Mackey, JJ., concur.
ORDERED that the decision is modified, without costs, by reversing so much thereof as disqualified claimant from receiving (1) an award for a 16.25% schedule loss of use of the right foot and (2) all future wage replacement benefits; and, as so modified, affirmed.

Footnotes

Footnote 1: In 2012, a Workers' Compensation Law Judge adjudicated a prior unrelated workers' compensation claim (WCBd No. G046 0976) filed by claimant alleging injuries to his right ankle and foot and awarded claimant an 8.75% schedule loss of use (hereinafter SLU) of the right foot (see Workers' Compensation Law § 15 [3] [d]). In 2008, claimant was also awarded a 7.50% SLU of the left foot for another unrelated workers' compensation claim (WCBd No. 20703711) (see Workers' Compensation Law § 15 [3] [d]).